IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORBERTO C.M., | Civil No. 1:26-cv-04674-MWJS |
| Petitioner, | ORDER GRANTING PRELIMINARY INJUNCTION |
| vs. | A# 236-137-002 |
| WARDEN, CENTRAL VALLEY ANNEX, *et al.*, | |
| Respondents. | |

**INTRODUCTION**

Petitioner Norberto C.M.[1] is detained at the Central Valley Annex pending the

resolution of his removal proceedings.  He seeks a writ of habeas corpus under 28

U.S.C. § 2241, Dkt. No. 1, and has moved for a temporary restraining order ordering his

immediate release on the basis that his detention violates the Due Process Clause of the

United States Constitution as well as the language of the Immigration and Nationality

Act (INA), Dkt. No. 3.  Respondents oppose the motion, arguing that it should be

denied for failure to exhaust administrative remedies because Petitioner is eligible for a

bond hearing pursuant to 8 U.S.C. § 1226(a) but has not requested one, and in any

---

[1]     For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

event, "no statutory or constitutional violation" has occurred in connection with his detention.  Dkt. No. 7, at pg. 2.  Respondents do not, however, oppose converting the motion into a motion for a preliminary injunction.

For the reasons that follow, the court concludes that Petitioner has shown a strong likelihood of success on the merits of his arguments—that he possesses a constitutionally protected liberty interest that the government cannot extinguish without affording pre-deprivation process, and that the prudential exhaustion requirement does not bar consideration of that constitutional claim—and that Petitioner has also satisfied the other requirements for interim relief.  The court therefore GRANTS the motion for a preliminary injunction.

## BACKGROUND

Petitioner is a 51-year-old native of Mexico who entered the United States on April 24, 1993, on a B-2 visitor visa and was admitted through October 23, 1993.  Dkt. No. 7-1, at pg. 2.  He did not depart upon the expiration of his authorized period of admission and has remained in the United States for the past 33 years.  Dkt. No. 7-3, at pg. 4; *see also* Dkt. No. 3, at pgs. 3-4.  During that time, Petitioner married his wife, a lawful permanent resident, and raised four United States citizen children, including a daughter who is currently serving her country in the United States Army.  Dkt. No. 1, at pgs. 2-3.

In June 2025, Petitioner's adult son filed an I-130 Petition for Alien Relative on Petitioner's behalf, an action representing the first step in the process to obtain lawful permanent residency (often referred to as a "Green Card") for Petitioner. *Id.* at pg. 6. That petition was subsequently approved by U.S. Citizenship and Immigration Services (USCIS). *Id.* at Dkt. No. 1-1; Dkt. No. 7-1, at pg. 2. As part of the next step in the process of applying for permanent residency, Petitioner submitted an I-485 Application to Register Permanent Residence or Adjust Status. Dkt. No. 7-1, at pg. 2. In connection with that application, "USCIS required Petitioner to appear for biometrics and fingerprinting" and to otherwise provide his identity and address. Dkt. No. 1, at pg. 6. Petitioner duly appeared at a USCIS field office in Dallas for his biometrics appointment on September 5, 2025, without incident. Dkt. No. 1-2.

For thirty-three years, the government did not seek to detain Petitioner after he overstayed his visa. And for nearly a year preceding Petitioner's detention, it continued to forego any effort to detain Petitioner even as he submitted (and the government approved) applications to adjust his immigration status; readily provided his identity, whereabouts, and biometric information to immigration authorities; and voluntarily appeared at USCIS offices to pursue his applications. But on May 29, 2026, the vehicle in which Petitioner was riding as a passenger was pulled over by local law enforcement as part of a routine traffic stop. Dkt. No. 1, at pg. 7. And when the officer conducting the traffic stop learned that Petitioner was not lawfully present in the United States, that

officer arrested Petitioner pursuant to his delegated authority to enforce federal immigration law under § 287(g) of the INA.  Dkt. No. 7-1, at pg. 2; *see generally Melendres v. Arpaio*, 989 F. Supp. 2d 822, 841-42 (D. Ariz. 2013).

Petitioner has remained in immigration detention ever since.  A few days into his detention, on June 2, 2026, he was issued a Notice to Appear charging him as being "an alien present in the United States without being admitted or paroled."  Dkt. No. 7-2.  Based on that charge, Petitioner understood that he was being held by Respondents "subject to mandatory detention" under § 1225(b) of the INA, "thereby depriving the Immigration Court of jurisdiction to conduct any individualized custody determination on the merits."  Dkt. No. 1, at pg. 7.  Accordingly, Petitioner filed his petition for writ of habeas corpus and motion for temporary restraining order before this court on June 18, 2026.  Dkt. Nos. 1, 3.  That same day, the court ordered Respondents to show cause why the motion for a temporary restraining order should not be granted and to address whether they requested a hearing or opposed converting the request for a temporary restraining order into a preliminary injunction without further briefing.  Dkt. No. 6.

Respondents timely responded to the order to show cause on June 23, 2026.  Dkt. No. 7.  In their response, Respondents represented that the original Notice to Appear issued to Petitioner had "erroneously charged [him] as an applicant for admission," but that after that "error was discovered," the government filed "superseding immigration charges" on June 22, 2026—four days after Petitioner filed the petition initiating this

4

case—"reflecting his status as a visa overstayer."  Dkt. No. 7, at pg. 2 n.1.  Accordingly, Respondents conceded that based on this superseding charge of removability, Petitioner is "lawfully detained under 8 U.S.C. § 1226(a) and eligible for a bond hearing" under the INA.  *Id.* at pg. 1.  Petitioner replied, noting that although the unanticipated shift in detention authority "materially change[d] the posture of this case," it did not "resolve the constitutional question presented by the Petition."  Dkt. No. 8, at pgs. 1-2.

Neither party has requested oral argument, and Respondents have indicated that they "do not oppose converting the motion for temporary restraining order to a motion for preliminary injunction."  Dkt. No. 7, at pg. 1.

## LEGAL STANDARD

To obtain a preliminary injunction, the moving party must satisfy four requirements known as the "*Winter* factors":  that is, they must show "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest."  *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  The moving party must make a showing on all four prongs in order to obtain injunctive relief, but under the Ninth Circuit's "sliding scale" approach, a demonstration that "serious questions going to the merits were raised and the balance of hardships tips sharply" in their favor

is sufficient for a preliminary injunction to issue.  *All. for the Wild Rockies v. Cottrell*, 632

F.3d 1127, 1134-35 (9th Cir. 2011).

## **DISCUSSION**

Petitioner contends that he has been unlawfully detained by Respondents

"despite his extensive family ties, longstanding residence, and full cooperation with

federal immigration authorities."  Dkt. No. 3, at pg. 2.  He asserts that he has resided in

the United States for decades and "actively participated in a government-supervised

immigration process" which has included USCIS's consideration and approval of

Petitioner's applications and a requirement that Petitioner "appear for biometrics and

fingerprinting," through which Respondents have obtained "Petitioner's identity,

address, fingerprints, and biographical information."  Dkt. No. 3, at pg. 2.  And he

contends that in light of the government's affirmative determination that he could live

at liberty in the United States for thirty-three years after overstaying his visa—including

for nearly a year while his application for lawful permanent residency remained

pending—it could not seize and detain him without first affording him pre-deprivation

process.

Respondents resist that claim on two grounds.  First, they argue that because

Petitioner is detained pursuant to § 1226(a), he is "eligible for a bond hearing that could

result in his release from immigration custody and render his habeas claim moot."  Dkt.

No. 7, at pg. 2.  On this basis, they submit that "injunctive relief should be denied

6

because Petitioner has failed to exhaust his administrative remedies and is unlikely to succeed on the merits of his underlying habeas petition." *Id.* at pg. 1.  As to the merits, they argue without elaboration that "there has been no due process violation." *Id.* at pg. 2.  The court addresses exhaustion first before turning to the merits.

### A.     The Prudential Exhaustion Requirement

Before a district court reaches the merits of a habeas petition challenging immigration detention, it ordinarily considers whether the petitioner has exhausted available administrative remedies.  *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Exhaustion of administrative remedies may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (cleaned up). But as both parties acknowledge, the exhaustion requirement in this context is prudential rather than jurisdictional.  *See* Dkt. No. 1, at pg. 8; Dkt. No. 7, at pg. 2.  Accordingly, the court may use its discretion to excuse exhaustion in situations where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable

injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (cleaned up).

Respondents argue that the motion should be denied based on Petitioner's failure to request a bond hearing pursuant to § 1226(a) before seeking habeas relief.  As an initial matter, it appears that such relief was not available to Petitioner at the time he filed the instant motion, based on the charge of removability in the then-operative Notice to Appear.  That procedural history—and the lost time resulting from Respondents' initial error—might have been enough to forgive a failure to exhaust even if Petitioner were only asking the court to order a § 1226(a) statutory bond hearing.  But in fact, Petitioner's central claim is that his detention has unconstitutionally deprived him of his right to due process from the outset.  That is the sort of constitutional challenge that is "beyond the competence of the [agency] to decide," *Zamorano v. Garland*, 2 F.4th 1213, 1224 (9th Cir. 2021) (cleaned up), and so the prudential exhaustion requirement does not bar review.  *See Hernandez v. Sessions*, 872 F.3d 976, 988-89 (9th Cir. 2017).  Moreover, as this court has previously explained in similar circumstances, "administrative exhaustion would not cure the due process violation that [P]etitioner experienced when he was detained without notice or an individualized assessment." *Leon Yero v. U.S. Gen. Att'y*, No. 1:26-cv-04312, 2026 WL 1707102, at *3 (E.D. Cal. June 12, 2026); *see also Wu v. Chestnut*, No. 1:26-cv-04953, 2026 WL 1906294, at *2 (E.D. Cal. July 2, 2026) (same).  The court accordingly concludes that Petitioner has shown a strong

likelihood of success on the merits of his threshold argument that his due process claim should not be rejected for failure to exhaust.

### B.     Petitioner's Protected Liberty Interest

The Due Process Clause applies to all "persons" within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Id.* at 690.  The first question is whether Petitioner held a liberty interest in his continued freedom such that the Government was required to afford process before depriving him of it.

Judges of this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for an extended duration while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process.  For example, in *De La Garza v. Albarran*, the district court considered the habeas petition of a long-present noncitizen who unlawfully entered the United States in 2008 and was not previously detained or released by immigration authorities.  No. 25-cv-10305, 2025 WL 3485157 (N.D. Cal. Dec. 4, 2025).  After sixteen years of residency in the country, he applied for lawful

9

permanent residence and completed biometrics processing several months later in connection with that application, but was detained at an ICE check-in the following year.  The court ordered his immediate release, finding that he possessed a liberty interest in continued freedom based on the fact that immigration authorities were "aware of Petitioner's past . . . history, but continued to process his immigration application, . . . and never sought to detain him previously."  *Id.* at *4.

Courts in this district and others have adopted similar reasoning to conclude that when a petitioner "enter[s] the United States lawfully" and later seeks lawful immigration status, "such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration," that reflects the government's "decision *not* to detain [Petitioner] in the first place" and vests the same liberty interest as a prior detention and release.  *Villanueva-Montanez v. Lyons*, No. 2:26-cv-00954, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026) (cleaned up); *see also Anderson v. Chernut*, No. 1:26-cv-01960, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (explaining that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release"); *Kharitonova v. Albarran*, No. 3:26-CV-01362, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (finding that "the government's decision not to detain Petitioner when it processed her [immigration] application, took her biometrics, . . . and advised her to appear" for appointments connected with her application gave rise to a

liberty interest); *Abdeltawab v. Armant*, No. EDCV 26-01520, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (finding a liberty interest for petitioners who "have never been in immigration custody in the first place due to years of deliberate acquiescence by [the government]"); *cf. Raj v. Mullin*, No. C26-1323, 2026 WL 13000423, at *3 (W.D. Wash. May 12, 2026) (collecting decisions throughout the Ninth Circuit holding that when noncitizen's valid immigration status expires and "the Government makes no effort to re-detain the noncitizen after expiration despite opportunities to do so," the noncitizen acquires a liberty interest in freedom from physical detention).  The court similarly finds that reasoning applicable and persuasive here.

Petitioner was lawfully admitted in 1993, making his claim even stronger than that of the petitioner in *De La Garza*, who unlawfully entered the country in 2008.  And although Petitioner remained in the United States well beyond the period authorized by his visa, the government made no effort to detain him—even well after he later voluntarily notified the government of his identity and lack of lawful immigration status by filing an I-130 Petition for Alien Relative and application for lawful permanent residency.  Not only did the government accept his I-130, but in connection with his application for permanent residency, the government also required Petitioner to appear in-person at a USCIS office to provide his biometric information.  So although his initial permission to enter the United States expired, the government made no effort to terminate his continued presence; to the contrary, it chose to facilitate his efforts to

obtain lawful immigration status nonetheless.  By concluding that there was no need to

detain Petitioner after his B-2 visitor visa had expired, and instead acquiescing to his

continued presence in the United States by facilitating his application for lawful

permanent residency, the government vested in Petitioner a liberty interest in his

continued freedom.  *See Villanueva-Montanez*, 2026 WL 797930, at *1; *Anderson v.

Chernut*, 2026 WL 809990, at *2; *see also Abdeltawab v. Armant,* No. EDCV 26-01520, 2026

WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026).  At a minimum, Petitioner has shown a

strong likelihood that he will succeed in advancing this argument.

### C.      Post-Deprivation Process

Having held a protected liberty interest, Petitioner was entitled to process

commensurate with that interest.  The familiar framework of *Mathews v. Eldridge*, 424

U.S. 319 (1976), governs what process is due, weighing the private interest affected, the

risk of erroneous deprivation under the procedures used and the probable value of

additional safeguards, and the Government's interest.  *Id.* at 335.  Each consideration

favors Petitioner.  His interest in freedom from physical detention is weighty.  *Zadvydas*,

533 U.S. at 690.  The risk of erroneous deprivation from seizing a long-present applicant

for lawful permanent residence with no criminal history, without any prior opportunity

to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that

risk is correspondingly high.  And the Government's interest is modest:  it has

identified no reason a custody hearing could not have preceded, rather than followed,

Petitioner's detention, and a pre-deprivation hearing imposes only the ordinary administrative burden of a proceeding the Government must conduct in any event. *See, e.g., E.E.O.H. v. Noem*, No. 1:26-cv-01266, 2026 WL 850363, at *5 (E.D. Cal. Mar. 26, 2026).

Respondents offer no specific reason to conclude that post-deprivation process would suffice to cure the constitutional violation in this case beyond their conclusory statement that "there has been no due process violation." Dkt. No. 7, at pg. 2. But to the extent that their arguments regarding the availability of a bond hearing pursuant to § 1226(a) might fairly be construed as arguments that a post-deprivation bond hearing would be sufficient to remedy Petitioner's unlawful detention, the court is not persuaded. When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect. *See Reyes Servin v. Semaia*, No. 5:26-cv-02745, 2026 WL 1670852, at *6–7 (C.D. Cal. June 4, 2026); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). Nothing in the record suggests that affording Petitioner a hearing before his seizure was impracticable. There is no suggestion, for example, that immigration officials raced to take Petitioner into custody because a new allegation of criminal conduct had emerged. *Accord Addemys N.R. v. Warden*, 1:26-cv-03892-MWJS, 2026 WL 1831763 (E.D. Cal. June 25, 2026) (holding that post-deprivation process was constitutionally sufficient because "Petitioner was recently arrested by state law enforcement authorities on a charge of having committed a serious criminal violation"). To the contrary, there is no suggestion that Petitioner has

13

any criminal history at all.  Because pre-deprivation process could have been provided to him and was not, it suffices to say that the post-deprivation process Petitioner received cannot substitute for the pre-deprivation process he was due.

### D.    Injunctive Relief

For the reasons articulated in *De La Garza*, *Kharitonova*, and other analogous cases, the court concludes that Petitioner has satisfied the *Winter* factors and is therefore entitled to a preliminary injunction.  First, the fact that "the government has not sought to detain Petitioner . . . while his immigration applications have been pending reflects a determination by the government that he was neither a flight risk nor a danger to the community" and suggests that Petitioner has a "strong interest in remaining at liberty unless he no longer meets those criteria."  *Carriollo v. Albarran*, No. 3:26-cv-05836, 2026 WL 1734895, at *2 (N.D. Cal. June 16, 2026).  "On this record, no evidence indicates that Petitioner no longer meets that criteria, and thus Petitioner has a strong likelihood of success on the merits."  *Id.*  As to the likelihood of irreparable injury, "[i]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury."  *Hernandez*, 872 F.3d at 994.  Finally, because the government is the opposing party in this case, the last two *Winter* factors—the balance of equities and the public interest—merge.  *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025).  As the Ninth Circuit has observed, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th

14

Cir. 2012) (cleaned up). The government, meanwhile, is not "harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983), and the only potential injury it faces here is a "short delay" in detaining Petitioner if it "ultimately demonstrates to a neutral decisionmaker" that his detention is necessary to prevent flight or danger to the community. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924, 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025). The balance of hardships therefore tip sharply in Petitioner's favor.

Because Petitioner has satisfied all of the *Winter* factors, he is entitled to a preliminary injunction returning him to the status quo—that is, "the last uncontested status which preceded the pending controversy." *Perez v. Albarran*, No. 1:25-cv-01540, 2025 WL 3187578, at *5 (E.D. Cal. Nov. 14, 2025) (cleaned up). In this case, that is "the moment prior to Petitioner's likely illegal detention." *Id.* (cleaned up). Accordingly, the court concludes that the immediate release of Petitioner is necessary in order to restore the status quo.

## CONCLUSION

For the reasons stated above, Petitioner's motion for a temporary restraining order, Dkt. No. 3, is CONVERTED into a motion for preliminary injunction and GRANTED as follows:

1. Respondents are ORDERED to immediately release Petitioner Norberto C.M. (A# 236-137-002) from their custody.

2. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing.  At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have their counsel present.  This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal, or in the event exigent or urgent circumstances arise that justify arresting and detaining Petitioner before pre-deprivation process can be provided.

3. Under the circumstances of this case, Petitioner will not be required to post bond pursuant Rule 65(c) of the Federal Rules of Civil Procedure, as there is "no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919-20 (9th Cir. 2003); *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (noting that Fed. R. Civ. P. 65(c) confers upon the district court the "discretion as to the amount of security required, if any").

16

4. The parties are directed to meet and confer and, if possible, submit a joint statement no later than fourteen (14) days from the date of entry of this order, indicating whether they request further briefing and/or a hearing on the underlying petition, or whether they are amenable to the court entering judgment thereon.  If the parties request further briefing and/or a hearing on the underlying petition, they should include in their joint statement a proposed briefing schedule and hearing date.

IT IS SO ORDERED.

DATED:     July 9, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 1:26-cv-04674-MWJS; *Norberto C.M. v. Warden, Central Valley Annex,* et al.;
ORDER GRANTING PRELIMINARY INJUNCTION